# Richmond.

## CRALL AND OSTRANDER v. COMMONWEALTH.

### January 26, 1905.

1. CRIMINAL LAW—*Peddlers—Corporations.*—A corporation may be punished criminally for peddling through the medium of an unlicensed agent. While a peddler's license cannot issue to a corporation as such, it may take out license in the name of a designated agent, and such agent may lawfully peddle the goods of the principal.

2. CRIMINAL LAW—*Corporations—Illegal Business—Liability of Officers—Peddlers.*—A corporation can only act through its officers and agents, and when the business itself involves a violation of the law, all who participate are liable. The Vice-President and General Manager of a corporation, in charge of its business, who knows that the subordinate agents of the company are peddling its goods without a license, may be punished criminally therefor, as for peddling without license. A principal is *prima facie* liable for the illegal acts of an agent done in the general course of an illegal business authorized by the principal, and if it be a misdemeanor he may be indicted without reference to the agent.

3. CRIMINAL LAW—*Peddlers—Sale—Lease.*—If goods are delivered and the title is to pass upon the payment of certain designated instalments of money, this constitutes a sale in contemplation of peddler's act, although the transaction be denominated a lease, and the deferred payments be called rent.

Error to a judgment of the Corporation Court of the city of Manchester, on the trial of an information against the plaintiffs in error.

*Affirmed in part, and reversed in part.*

The information in this case was joint against the L. B. Price Mercantile Company, C. C. Ostrander and W. F. Crall. It contained six counts, each a separate charge of a sale without license to a different individual. It made no reference to the relation that either party bore to the other. The plaintiffs in error were proceeded against as individuals, and each count charged that all three defendants did unlawfully peddle and sell without a license. The proof was that neither of the plaintiffs in error made any one or more of the sales in person, but that the sales were made by a person or persons employed for that purpose.

*R. Randolph Hicks*, for the plaintiffs in error.

*Attorney-General William A. Anderson*, for the Commonwealth.

WHITTLE, J., delivered the opinion of the court.

Plaintiffs in error were tried and convicted upon information, in the Corporation Court of the city of Manchester, for peddling goods, wares and merchandise in that city without having first obtained a license as required by statute.

It appears that the L. B. Price Mercantile Company, a Missouri corporation domiciled at Kansas City, had established store-rooms, or depositories, for its goods in some twenty odd States of the Union. Among them, two were located in this State—one in the city of Norfolk, and the other in the city of Richmond. The plaintiff in error, Crall, was the vice-president of the company, in general charge of its business in the Southern States, and with headquarters at Norfolk; while the plaintiff in error, Ostrander, under the supervision of Crall, was in charge of the Richmond depository.

Two theories are presented as to the company's methods of

conducting its business, to sustain each of which evidence has been adduced.

The contention of plaintiffs in error is that they were doing an installment business through agents, who were supplied with samples and order-books, and whose duty it was to exhibit the samples and to canvass for purchasers, turning in all orders received by them to those in charge of the company's depositories; that thereupon the orders filled by another agent, who delivered the goods, collected a certain part of the purchase price, and took from the purchaser a written agreement providing for future payments in monthly installments, and stipulating that the goods were not to be removed from the place of delivery or sold or disposed of until fully paid for.

The opposing theory of the Commonwealth is that the course of business of the company was to deliver to its agents goods, wares and merchandise, to be carried by them from place to place and left with the purchaser on "general leases"—that is to say, to be paid for in installments, the L. B. Price Mercantile Company retaining title until the entire purchase price was paid.

The company dealt in rugs, curtains, bedspreads, blankets, covers, dress patterns, clocks, plated ware, wringers, albums, pictures and other wares usually sold by peddlers.

The statute upon which the prosecution is founded is as follows:

"Any person who shall carry from place to place any goods, wares or merchandise, and offer to sell or barter the same, or actually sells or barters the same, shall be deemed to be a peddler, and any person licensed as a peddler may sell any personal property a merchant may sell, or he may exchange the same for other articles; and whenever a license is granted to a peddler to sell such goods, wares or merchandise his license shall be valid for one year from date of its issue. Said license

shall not be transferable, and any person so licensed shall endorse his name on the said license, and such license shall confer authority to sell at any house or place within the county or city in which the license was granted. Any peddler who shall peddle for sale, or sell or barter, without a license, shall pay a fine of not less than one hundred dollars, nor more than five hundred dollars for each offense, one-half of which shall go to the informer; and any person selling or offering to sell as a peddler shall exhibit his license on a demand of any citizen of the county, city, or town.in which he sells or offers to sell or barter; and upon his failure or refusal to do so he shall be subject to the penalties of peddling without a license. This section shall be construed to include persons engaged in peddling lightning rods. All persons who do not keep a regular place of business (whether it be in a house, on a vacant lot, or elsewhere) open at all times in regular business hours, and at the same place, who shall offer for sale goods, wares and merchandise, shall be deemed peddlers under this act. And all persons who keep a regular place of business open at all times in regular business hours, and at the same place, who shall personally, or through their agents, offer for sale or sell, and at the time of such offering or sale deliver goods, wares and merchandise, elsewhere than at such regular place of business, shall also be deemed peddlers as above; but this section shall not apply to those who sell or offer for sale, in person or by their employees, ice, fuel, meats, fowls, fish, game, vegetables, fruits, or other family supplies of a perishable nature grown or produced by them; nor to merchants who keep a regular place of business open at all times in regular business hours, and at the same place, without a city or town, who shall sell such articles to merchants only residing and doing business in a city or town." Acts 1902-3-4, p. 484.

At the trial, the whole matter of law and fact having been

submitted to the court, the judgment of conviction was rendered against Crall and Ostrander. The case is, therefore, before this court as upon a demurrer to evidence, and the evidence of the Commonwealth seems quite sufficient to sustain the charge that the sales in question were made by the L. B. Price Mercantile Company, through their agents, and elsewhere than at their regular place of business.

The law is well settled that a corporation may be punished criminally for peddling through the medium of an unlicensed agent. While a peddler's license cannot issue to a corporation as such, it is competent for a corporation desiring to peddle its goods to take out license in the name of a designated agent, and such agent may lawfully peddle the goods of the principal. *Standard Oil Co.* v. *Commonwealth* (Ky.), 55 S. W. 8.

This seems to be conceded; but it is insisted that where a corporation is guilty of a violation of the peddlers' act, the punishment must be visited only upon the corporation, and the agent who actually makes the sales.

The statement of the law is too narrow, and, if followed, would in many instances afford immunity to the chief offenders, the officers of the corporation, without whose assistance it would be impossible for the corporation to engage in the prohibited business. A corporation can act alone through its officers and agents, and where the business itself involves a violation of the law, the correct rule is that all who participate in it are liable. "The Law of Crimes" (Clark & Marshall), pp. 395, 6, 7; 1 Bish. on Crim. Law (7th Ed.), sec. 892; *City of Wyandotte* v. *Corrigan* (Kan.), 10 Pac. 99, 102; *Standard Oil Co.* v. *Com.*, *supra; Hays* v. *Com.*, 55 S. W. 425, 426.

"When the agent performs the illegal act under an absent principal's direction, either express or implied, this imposes responsibility on the principal.

"In misdemeanors, the act may be charged to have been

done by the principal himself without reference to an agent."
1 Whar. Crim. Law (9th Ed.), sec. 246.

"A principal is *prima facie* liable for the illegal acts of an
agent done in a general course of illegal business authorized by
the principal." *Id.* sec. 247.

In this case it is contended that the plaintiff in error, W. F.
Crall, was vice-president and general manager of the L. B.
Price Mercantile Company, in charge of all its business in the
Southern States. He was the vice-principal, and the trial court
was warranted in the conclusion that he was cognizant of the
fact that the subordinate agents of the company were peddling
its goods without license.

The case is unaffected by the circumstance that the trans-
action was denominated *a lease,* and that title to the goods was
to remain in the seller until the *rent* was paid. The agreement
was accompanied by a delivery of the goods, and, by its terms,
title was to vest in the purchaser upon payment of the deferred
installments of *rent.* Such a transaction is a sale in contempla-
tion of the peddlers' act. *City of South Bend* v. *Martin* (Ind.),
41 N. E. 315, 29 L. R. A. 531; *Ry. Co.* v. *Ervine,* 84 Ind.
457; *Lawrence* v. *McGregor,* 94 Ind. 301.

For these reasons the judgment of the Corporation Court
of the city of Manchester must be affirmed as to the plaintiff
in error, W. F. Crall.

The record presents quite a different case as to the plaintiff
in error, C. C. Ostrander. He was only found guilty under
the second charge in the information, namely, of the unlawful
sale, on October 20, 1902, of a piece of dress goods to one Lucy
J. Clarke.

It appears from the evidence that this sale was made before
Ostrander became manager of the Richmond store, and he
cannot be held responsible therefor.

The judgment as to him must, therefore, be reversed and

annulled, and this court will enter such judgment as the Corporation Court ought to have entered, adjudging the said C. C. Ostrander not guilty of peddling goods without a license, as charged in the information, and ordering that he be acquitted and discharged and go hence without day.

*Affirmed in part, and reversed in part.*