**OAK GROVE FARM LIMITED PARTNERSHIP, Plaintiff,**

v.

**CONAGRA, INC., Defendant.**

No. 4:00CV3089.

United States District Court, D. Nebraska.

July 25, 2000.

H. Daniel Smith, Christopher D. Curzon, Dwyer, Smith Law Firm, Omaha, NE, for plaintiff.

Douglas E. Quinn, James G. Powers, William F. Hargens, McGrath, North Law Firm, Omaha, NE, for defendant.

## MEMORANDUM AND ORDER

KOPF, District Judge.

The motion to dismiss filed by ConAgra, Inc. (ConAgra) raises a question of first impression. Does Neb.Rev.Stat.Ann. § 59–805 (Lexis 1995) apply only to contracts between competitors or does the statute also apply to contracts between a producer and a supplier?

I will deny the motion to dismiss. A plain and ordinary reading of all the words of the statute prohibits both types of anti-competitive conduct. Of course, I express no opinion about whether ConAgra really did the things that the plaintiff charges.

### I. Background

Invoking the bankruptcy jurisdiction of the court, Oak Grove Farm Limited Partnership (Oak Grove), a debtor, sued ConAgra in a two-count complaint. It is the second count that ConAgra has moved to dismiss for failure to state a claim.

In the second count of the first amended complaint, Oak Groves alleges that it entered into a contract with ConAgra to supply ConAgra with hogs for its processing plants; that pursuant to the contract Con-Agra altered the pricing structure for the hogs; and that ConAgra did this for the purpose of driving Oak Grove out of business. This, so says Oak Grove, is a violation of Neb.Rev.Stat.Ann. § 59–805. That statute states:

§ 59–805. Restraint of trade; underselling; penalty.

Every person, corporation, joint-stock company, limited liability company, or other association engaged in business within this state which enters into any contract, combination, or conspiracy or which gives any direction or authority to do any act for the purpose of driving out of business any other person engaged therein or which for such purpose in the course of such business sells any article or product at less than its fair market value or at a less price than it is accustomed to demand or receive therefor in any other place under like conditions or which sells any article upon a condition, contract, or understanding that it shall not be sold again by the purchaser or restrains such sale by the purchaser shall be deemed guilty of a Class IV felony.

*Id.*

### II. Discussion

ConAgra argues that the statute is "clearly designed to prohibit unlawful actions *between competitors.*" (ConAgra's Mem.Br. at 4 (emphasis added).) According to ConAgra, the statute means that "a plaintiff must allege and prove that the person acting to drive the plaintiff out of business is also 'engaged' *in the plaintiff's business.*" (*Id.* (emphasis added).)

I reject ConAgra's reading of the statute. Albeit briefly, my reasons for this decision are set forth below.

As with federal laws,[1] when reading a Nebraska statute, the "statutory language

---

[1] Using the federal cases, when a question arises regarding the meaning of the law, "the starting point ... is the language of the statute itself." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980). If the language of the law is clear, "the words of the statute [are also] the end of the judicial inquiry." *Northern States Power Co. v. United States,* 73 F.3d 764, 766 (8th Cir.) (citation

is to be given its plain and ordinary meaning," a court should "not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous," and when "the language of a statute is clear, the words of such statute are the end of any judicial inquiry regarding its meaning." *Sack v. State,* 259 Neb. 463, 467, 610 N.W.2d 385, 389 (2000) (citing *State v. Jones,* 258 Neb. 695, 605 N.W.2d 434 (2000); *Ameritas Life Ins. v. Balka,* 257 Neb. 878, 601 N.W.2d 508 (1999)). "[D]ifferent provisions of the act" should be read to make them "consistent, harmonious, and sensible." *Id.* at 468, 610 N.W.2d at 390 (citing *Central States Found. v. Balka,* 256 Neb. 369, 590 N.W.2d 832 (1999)).

The statute prohibits anyone "engaged in business within this state" from entering "into any contract . . . for the purpose of driving out of business any other person engaged therein. . . ." Neb.Rev.Stat.Ann. § 59–805. It does *not,* as ConAgra suggests, prohibit anyone "engaged in business within this state" from "entering into any contract for the purpose of driving out of business any other person" who is engaged "in *the same* business." The word "business" is not followed by the word "same" or any other qualifying word or phrase. On the contrary, the word "business" is unqualified, and is not in any way limited to a particular type of business.

ConAgra observes, correctly, that the relevant language includes the words "engaged therein." ConAgra argues that the words "engaged therein" mean that the defendant must be a competitor of the plaintiff. Respectfully, I do not understand why this is so. The word "therein" refers to the word "business" in the same sentence. The word "therein" requires only that the parties be engaged in "business" in the State of Nebraska, not that the defendant be a competitor engaged in the same business as the plaintiff. Giving the word its plain and ordinary meaning,

the word "therein" does not increase or decrease the scope of "business." Rather, we properly read the statute this way: No one "engaged in business in this state" may enter "into any contract . . . for the purpose of driving out of business any other person engaged in business in this state."

That the statute applies to non-competitors is made evident by statutory language ignored by ConAgra. For example, the same law also explicitly prohibits a seller from restricting a purchaser from reselling a product. Neb.Rev.Stat.Ann. § 59–805 (No person "engaged in business in this state" may sell an "article upon a . . . . contract . . . that it shall not be sold again by the purchaser. . . ."). Purchasers and sellers are not competitors. Yet the statute explicitly bans restrictions against resale. Therefore, there is no reason to impute to one portion of the statute a requirement that the dominant party and the aggrieved party be competitors when another portion of the same statute makes clear that no such requirement was intended.

This straightforward reading of the Nebraska statute is consistent with the few cases applying the law. For example, in 1939 the Nebraska Supreme Court found that the predecessor of section 59–805, even though criminal in nature, also provided a private right of action. *O.G. Pierce Co. v. Century Indem. Co.,* 136 Neb. 78, 80, 285 N.W. 91, 93 (1939) (suit by insurance agency against insurance company and others for conspiring to present fake claims to the plaintiff for the purpose of driving the agency out of business). In so finding, the court noted that while Nebraska's law was patterned after federal anti-trust law, the Nebraska statute is "broader . . . and in addition provides that *any* attempt to drive another person (corporation) out of business is unlawful." *Id.* at 80, 285 N.W. at 93–94 (emphasis added).

and internal quotations omitted), *cert. denied,* 519 U.S. 862, 117 S.Ct. 168, 136 L.Ed.2d 110

(1996).

According to the Nebraska Supreme Court, the "act permits more liberality of interpretation." *Id.* at 80, 285 N.W. at 94.

### III. Conclusion

Applying well-known Nebraska legal principles, Neb.Rev.Stat.Ann. § 59–805 does not apply only to the plaintiff's competitors. On the contrary, giving the words of the statute their ordinary meaning and reading all portions of the statute together to make them consistent, Neb. Rev.Stat.Ann. § 59–805 applies to contracts entered into between a producer and a supplier.

Accordingly,

IT IS ORDERED that ConAgra's motion to dismiss (part 2 of filing 5) is denied.